Sedgwick, Ch. J.
The action was by the owners of the steamship “Limosa,” against the defendants as charterers, for an alleged breach in not loading as provided by the charter. The charter was not made by the defendants, nor did their names appear as charterers. The plaintiffs’ names did not appear as principals on the charter. They were represented by their agents, Seager & Brothers. One Card appeared to be the charterer. It was claimed by the plaintiffs that Card acted as the agent of the defendants. The defendants did business in Charleston, South Carolina. Seager & Brothers did business in Hew York. The charter, as it was construed by the plaintiffs, provided that the “Limosa” should proceed to Charleston with all reasonable dispatch, subject to any delay caused by the perils of the sea. It did not provide for readiness to take an April shipment at Charleston.
On the trial the plaintiffs took the position that Card was authorized to make the charter as it was. Card testified that he was thus authorized. The defendants took the position that, in the conversation which Card testified to as the authority, the partner acting for them had referred to obtaining a vessel for an April shipment, and no other. They also claimed that the arrangement was that they were to take a vessel from Card, and not that Card should bind them to third parties, of whom Card, acting as broker, for defendants, should charter the vessel. *247 The acting partner testified as a witness that he had spoken only of a vessel for an April shipment. When the case went to the jury, the single question of fact left to them was the nature of the conversation between Card and the acting partner, as to which they were in conflict. When the acting partner was on the stand, the counsel for defendant asked him questions appropriate to elicit testimony that at the time of the conversation the defendants had, in the course of their business, made a contract, or contracts, for the shipment of phosphate rock, in bulk, in the month of April. The cargo of the vessel to be chartered was to be phosphate rock. The court, on objection, excluded these questions.
In the conflict of witnesses, a relevant subject of inquiry by the jury was the motive of the defendants— the reason for their action. In determining the probabilities of the testimony, and the credibility of the witnesses, it was a sound argument that the declarations of the acting partner conformed to the object he had in view, and this would be shown by the kind of need the defendants had for facilities to ship goods; that is, whether it was for their interest to ship the goods in April, or whether they could wait indefinitely. As the jury might have been materially affected by the proof of the facts, judgment upon the verdict should be set aside.
Other questions made at the trial call for further consideration, for the purposes of the new trial that must be had.
In the month of April, the “ Limosa ” arrived at Hew York, so seriously damaged from a disaster at sea, that it was judged by Card and the defendants, to whom report was made of her condition, that the making of the necessary repairs would keep her at Hew York so long, that she could not be at Charleston in time to take a cargo in the month of April. There was testimony for the defendants, that until after this action was begun they never knew the terms of the charter. They, thinking it provided for taking a cargo in April, upon hearing of the *248 disaster, told Card that they would not take the vessel. Card wrote to Seager & Brothers, that his principals canceled the policy, and bargaining began about a new charter to be made for the same kind of cargo for shipment in May. Card insisted that the making of the new charter should be upon condition of the cancellation of the one in suit here. Seager & Brothers insisted that the making of the new charter should leave unaffected the rights of the parties under the old charter. Before the matter was closed, Card sent to Seager Brothers four copies of the proposed new charter of the “Limosa” signed by himself, with an accompanying letter in which he stated at the close, “I now beg to confirm charter made to-day, the former being canceled, and send you herewith four copies of charter.” The proposed charter contained a provision for a May shipment. Seager Brothers by telegram insisted on erasing this provision, and said that the last sentence of his letter inclosing the copies was contrary to the agreement—the former charter not being canceled. The matter at that point was open, neither party being bound. On April 27, Card wrote, after referring to the last communication from Seager Brothers, ‘ ‘ As I don’t exactly understand what you mean by this telegram, I am wiring you this evening by night message as follows, in order to ascertain what you are going to do in the matter, ‘ Limosa ’ charter dated March 20, was canceled or I would not have signed another. Do you confirm charter dated April 25, as per copies sent you, or not.” This conditioned Card being bound by the charter he sent, upon the other party agreeing to cancel the charter in this action. The next day Seager Brothers telegraphed “We accept 1 Limosa ’ charter as per copies sent to us,” and in a letter of 28th acknowledged the receipt of Card’s telegram and confirmed the copies of the charter sent by Card. This was an acceptance of the condition referred to and canceled, as they called it, the first charter. The legal effect was that the plaintiffs, through their agents, Seager Brothers, for a consideration, dis *249 charged whoever was liable on the charter from its obligation to them.
It further appears that there was a question of fact, as to whether the plaintiff had not elected finally to hold Card upon the charter, and not to look to defendants as undisclosed principals.
Judgment reversed, new trial ordered, with costs to abide event.